IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § Plaintiff, § § v. § JASON A. HALEK, JOSHUA D. SPIVEY, § PATRICK J. BOOTHS, and STEVEN J. LITTLE, § § Defendants. § § | Civil Action No.: |

# COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint and alleges the following against Defendants Jason A. Halek ("Halek"), Joshua D. Spivey ("Spivey"), Patrick J. Booths ('Booths"), and Steven J. Little ("Little") (collectively, "Defendants"):

## SUMMARY

1.  Between September 2009 and June 2010, Halek, Spivey, Booths, and Little fraudulently offered and sold unregistered securities in the form of working interests in six Jack County, Texas oil and gas projects that were owned and operated by Halek's company, Halek Energy, LLC ("Halek Energy"). Spivey, Little, and a third individual offered and sold the interests in these projects to investors through their separately incorporated limited liability companies ("LLCs"). These individuals and LLCs, which were characterized as "industry partners," were, in fact, straw men who sold and promoted investments in new Halek Energy oil and gas projects. Booths was Halek Energy's Vice President of Sales and Marketing and served

as Halek's point man on the scheme. Booths helped Halek recruit the "industry partners" and assisted in facilitating their sale and promotion of Halek Energy projects through their LLCs.

2. In offering documents used to solicit and entice investors, each of the LLCs was falsely identified as the 100% owner and issuer of the same oil and gas projects. In fact, none of the LLCs owned any part of the projects. Rather, the projects were established and owned by Halek Energy and controlled by Halek and Booths. Through this so-called "industry partner" model, Halek and the other defendants sold more than $5.5 million in Halek Energy oil and gas working interests to more than 100 investors nationwide. Spivey and Little each received large commissions or other compensation from promoting and selling the working interests for Halek and Halek Energy. Booths received a large salary from Halek Energy, as well as commission payments from Spivey.

3. Halek conceived of the straw man scheme after the Commission began investigating Halek and Halek Energy's involvement in an earlier scheme to make fraudulent oil-and-gas securities offerings. As a result of that earlier scheme, in 2010, Halek was enjoined from violating various antifraud and other provisions of the federal securities laws, and was ordered to pay more than $26 million in penalties, disgorgement and prejudgment interest. Despite the final judgment against him, which was affirmed by the Fifth Circuit Court of Appeals, Halek has not made any payments to the Commission.

4. The Commission brings this civil enforcement action seeking permanent injunctions, disgorgement plus pre-judgment interest, and civil penalties for violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)] and Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78o(a)] and Rule 10b-5 thereunder [17 C.F.R.

§240.10b-5]. In addition, the Commission also seeks an injunction against Halek that would prohibit him from directly or indirectly offering or selling unregistered securities that are issued by him or by an entity, either directly or indirectly, owned or controlled by him.

## JURISDICTION AND VENUE

5. The investments offered and sold by Defendants are "securities" under Section 2(1) of the Securities Act [15 U.S.C. § 77(b)1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

6. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

6. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa].

7. Defendants have, directly or indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, transactions, practices, and courses of business described in this Complaint.

8. Venue is proper in this district because certain of the acts, transactions, practices, and courses of business constituting the violations alleged in this Complaint occurred in the Northern District of Texas and certain of the victims are located in this district.

## DEFENDANTS

9. Halek resides in Southlake, Texas. Halek was the CEO and President (and owner and controller) of Halek Energy.

10. Booths resides in Fort Worth, Texas. He was the Vice-President, Sales and Marketing for Halek Energy.

11. Spivey resides in Morristown, Tennessee. Spivey conducted business through Time Talent Treasure Investments, LLC d/b/a T3 Consulting, LLC ("T3").

12. Little resides in Southlake, Texas. Little conducted business through Nevaeh Energy, LLC ("Neveah").

## RELATED ENTITIES

13. Halek Energy is a Texas LLC formerly located in Southlake, Texas. On April 1, 2011, Halek Energy filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code. *See In re: Halek Energy, LLC, et al.*, Case No: 11-41880-DML-11 (N.D. Tex.). On the motion of a committee of Halek Energy investors and creditors, on May 18, 2011, the bankruptcy court appointed a trustee for the Halek Energy bankruptcy estate. The bankruptcy proceeding was closed and a final decree was entered on February 19, 2014.

14. T3 is a Texas LLC located in Southlake, Texas that Spivey owned and controlled and whose sole business was the offer and sale of interests in Halek-owned or controlled oil and gas projects.

15. Nevaeh is a Texas LLC located in Southlake, Texas that Little owned and controlled, and whose sole business was the offer and sale of interests in Halek-owned or controlled oil and gas projects.

## STATEMENT OF FACTS

A. The Use of "Industry Partners" as Proxies for Halek Energy

16. In February 2009, Halek and his two energy companies, Halek Energy and CBO Energy, Inc., were under investigation by the Commission staff based on suspicion that they were engaged in securities fraud and various registration violations.

17. As a result of the investigation, in 2010, the Commission brought a civil enforcement action against Halek, his two companies, and a salesperson working for Halek, alleging that between June 2007 and September 2009, Halek orchestrated a fraudulent scheme to offer and sell unregistered securities in oil and gas projects that Halek established, owned, and controlled. *SEC v. Halek Energy, LLC, et al.*, 3-10-cv-1719-K (N.D. Tex., Kinkeade, J.) (hereinafter, "the 2010 Lawsuit"). The complaint alleged that Halek's scheme defrauded at least 300 investors of more than $22 million and that defendants made materially false and misleading statements about the risk of investments, the use of investor funds and the return from investments. In 2012, the Court entered final judgments against defendants, finding Halek and his companies jointly and severally liable for disgorgement of ill-gotten profits of more than $21 million, and imposing prejudgment interest and penalties, for a total judgment of over $26 million, The Fifth Circuit affirmed the judgment against Halek following his appeal. *See SEC v. Halek*, 537 Fed. Appx. 576, 582 (5th Cir. 2013).

18. Unbeknownst to the Commission staff at the time it filed its the 2010 Lawsuit, immediately after becoming aware of the 2009 investigation, Halek began orchestrating a new fraudulent scheme in an apparent attempt to evade the Commission's scrutiny.

19. At some point after the Commission's initial investigation began in 2009, Halek terminated all of Halek Energy's in-house sales staff and promoted Booths to Vice-President,

Sales and Marketing. Halek also decided that, rather than employ an in-house sales staff, he would sell and promote Halek Energy through third-party salespersons and their LLCs – so-called "industry partners." The industry partners would be compensated with a 20-percent sales commission for each working interest sold. Halek and Booths ultimately identified and approached Spivey and Little, as well as a third individual, to become industry partners.

**B.     Spivey's Unregistered Securities Offering for Halek Energy**

20.     During the summer of 2009, Booths and Halek asked Spivey to consider working with Booths to sell Halek Energy investments as an industry partner. Spivey agreed to sell working interests in Halek Energy oil and gas projects through his company, T3, for a 20% commission for each working interest he sold.

21.     To find investors to buy working interests in Halek Energy projects from T3, Spivey and Booths used a combination of contacts with previous Halek Energy investors, referrals, seminars, and other speaking engagements in cities across the country. From September 2009 to May 2010, Halek, Booths, and Spivey used T3 to sell interests in six Halek Energy projects on the Halek Energy-owned Johnson lease located in Jack County, Texas: (1) the Johnson 6 Prospect; (2) the Johnson 3H Prospect; (3) the Johnson 4 Prospect; (4) the Johnson 5 Prospect; (5) the Johnson 7 Prospect; and (6) the Johnson 8H Prospect (collectively, the "Johnson Lease Prospects"). Through T3, Halek, Booths, and Spivey raised approximately $4.6 million from at least 100 investors, of which $3.7 million went to Halek Energy and approximately $900,000 was retained by Spivey/T3 as sales commissions. Spivey also paid sales commissions to Booths.

## C. Little's Unregistered Securities Offerings for Halek Energy

22. Booths and Halek approached Little in early 2010 to consider forming a LLC to sell investments in Halek Energy projects for a 20% commission. Little agreed to become an industry partner and formed Nevaeh ("Heaven," spelled backwards) in March 2010 to sell interests in Halek Energy projects. Little mainly sold Halek Energy through his many existing client and customer relationships.

23. From March 2009 to May 2010, Halek, Booths, and Little sold two Johnson Lease Prospects through Nevaeh, raising approximately $882,500 from 34 investors. Approximately $649,900 of this went to Halek Energy, and the remainder, $232,600, was retained by Little as sales commissions.

## D. The Preparation of the PPMs Used by Spivey and Little

24. Halek instructed Booths and other Halek Energy employees to help the industry partners (Spivey, Little, and the third individual) prepare investor materials for their LLCs, including private placement memoranda ("PPMs"), subscription materials, and other promotional materials. Halek Energy employees merely revised a pre-existing Halek Energy PPM to substitute the names and logos of the industry partner LLCs, either T3 or Neveah (or the third individual's LLC). Halek, Booths, or other Halek Energy employees then emailed electronic copies of PPMs to the industry partners, including Spivey, Little and the third individual. The PPMs were identical except for the name of the offering LLC, which in each case was falsely identified as the 100% owner of the working interest in the project. To the extent Halek Energy was mentioned at all, it was only as operator of the project and not as the issuer. The industry partners then printed as many PPMs as was necessary to solicit investors. After securing investments, they transmitted investor funds, less commissions, to Halek Energy.

Halek's staff tracked the sales in an apparent attempt to ensure that, collectively, the LLCs were not selling more interests than Halek Energy owned.

E. **False and Misleading Information Contained in the PPMs**

25. The industry partner PPMs included several materially false and misleading statements and omitted or failed to disclose material information.

26. For example, the PPMs did not disclose the industry partners' sales agreements with Halek Energy, through which the partners were acting as Halek Energy's sales agents. Instead, the PPMs falsely portrayed each industry partner as owning a "100% of the working interest [in each project] and . . . offering as an investment through this exclusive private placement offer, 75% of the owned working interest for 100% of the cost of the total project." If the PPMs mentioned Halek Energy, they described it as merely the operator of the project, rather than as owner of the leases and issuer of the securities. Several later PPMs did not mention Halek Energy at all.

27. Further, the use of proceeds sections in the PPMs did not disclose the payment arrangement between the industry partners and Halek/Halek Energy, through which the industry partners retained 20% of investor funds as sales commissions.

28. The PPMs falsely stated that a portion of "the Company's [defined as T3, Nevaeh, or the third individual's LLC] carried working interest will be allocated to certain charities, as designated by the members of the Charities Board of Directors, who work together to support charitable work that has a lasting positive impact on a local and global level." In fact, the industry partners did not carry a working interest in any of the Johnson Lease Prospects. Rather, this provision apparently referred to Halek Energy's purported charitable activities and Halek Energy's working interest, not those of the industry partners.

29. The PPMs falsely provided that the industry partners "will sell the working interest only to Accredited Investors who are sophisticated in financial matters." However, the working interests were indiscriminately sold without regard to investors' financial status.

30. The PPMs that Spivey and the third individual disseminated between September and November 2009 for three projects misrepresented and exaggerated Halek's background and experience. For example, these PPMs grossly overstated Halek's successes and attributes, asserting among other things that he "grew Halek Energy into a significant turnkey oil and gas producer in the state of Texas" and "keeps the Halek Energy Team very involved in numerous charitable causes." Rather, Halek's "success" in the oil and gas industry was trivial at best, and Halek Energy's actual charitable contributions were either insignificant or nonexistent.

### F. Defendants Each Acted as an Unregistered Broker, and the Securities Offerings Were Not Registered.

31. During all relevant periods, Defendants Spivey, Little and Booths offered and/or sold interests in the Johnson Lease projects, and Halek supervised their activities and directed the offer and/or sale of the interests, while not registered as a broker-dealer with the Commission, or associated with a registered broker-dealer. Spivey, Little and Booths each received commission payments in connection with their sales or securities, and Halek paid them or caused them to be paid commission payments.

32. During all relevant periods, no registration statement was filed or in effect with the Commission or was in effect as to any of the interests in the Johnson Lease projects. No registration exemption applied to the offering of interests in the Johnson Lease projects.

## CLAIMS FOR RELIEF

### FIRST CLAIM

**Fraud in Violation of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**

**Against Defendants Halek and Booths**

33. The Commission repeats and incorporates paragraphs 1 through 32 of this Complaint by reference.

34. Halek and Booths, directly or indirectly, singly or in concert with others, in connection with the purchase and sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

35. Halek and Booths engaged in the above-referenced conduct, intentionally, knowingly or with severe recklessness regarding the truth.

37. For these reasons, Halek and Booths violated and, and enjoined, will continue to violate Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 780-5].

## SECOND CLAIM

### Fraud in Violation of Securities Act Section 17(a)

### Against All Defendants

38. The Commission repeats and incorporates paragraphs 1 through 32 of this Complaint as if set forth verbatim.

39. Defendants, directly or indirectly, in the offer and sale of securities, and by use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which he were made, not misleading; or (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

40. With respect to violations of Sections 17(a)(1) of the Securities Act, Defendants Halek and Booths acted knowingly, or with severe recklessness regarding the truth. With respect to violations of Section 17(a)(2) and (3) of the Securities Act, Defendants Halek, Booths, Spivey and Little were at least negligent in their actions regarding the representations and omissions alleged herein.

41. For these reasons, Defendants violated, and unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM

**Offer and Sale of Unregistered Securities in Violation of
Securities Act Sections 5(a) and 5(c)**

**Against All Defendants**

42. The Commission repeats and incorporates paragraphs 1 through 32 of this Complaint as if set forth verbatim.

43. Defendants, directly or indirectly, have made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, when no registration statement was in effect with the Commission as to such securities, and have made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell such securities when no registration statement had been filed with the Commission as to such securities.

44. There were no applicable exemptions from registration.

45. By reasons of the foregoing, Defendants violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FOURTH CLAIM

**Offers and Sales of Securities by an Unregistered Broker or Dealer in Violation of
Exchange Act Section 15(a)**

**Against All Defendants**

46. The Commission repeats and incorporates paragraphs 1 through 32 of this Complaint as if set forth verbatim.

47. Defendants, while engaged in the business of effecting transactions in securities for the accounts of others, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, a

security without being registered in accordance with Section 15(a) of the Exchange Act..

48. By reason of the foregoing, Defendants violated and, unless enjoined, will continue to violate Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

1) enter an Order finding that Defendants committed, and unless restrained will continue to commit, the violations alleged in the First through Fourth Claims for Relief in this Complaint;

2) permanently restrain and enjoin Halek and Booths from future violations of Section 10(b) the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 78o-5] and Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)];

3) permanently restrain and enjoin Spivey and Little from future violations of Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)];

4) permanently restrain and enjoin Defendants Halek, Booths, Spivey, and Little from future violations of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)], and restrain Halek from directly or indirectly soliciting or accepting funds from any person or entity for any unregistered offering of securities;

5) permanently restrain and enjoin Defendants Halek, Booths, Spivey, and Little from future violations of Section 15(a) of the Exchange Act [15 U.S.C. §§ 78j(b)];

6) order Defendants Halek, Booths, Spivey, and Little to disgorge ill-gotten gains from the conduct alleged herein, with prejudgment interest on that amount;

7) order civil penalties against Defendants Halek, Booths, Spivey, and Little pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the


Exchange Act [15 U.S.C. § 78u(d)] for violations of the federal securities laws as alleged herein; and

    8)    order such further relief as the Court may deem just and proper.

Dated: March 28, 2014    Respectfully submitted,

*/s/ Jennifer D. Brandt*
Jennifer D. Brandt
Texas Bar No. 00796242
*brandtj@sec.gov*
Mark T. Pittman
Texas Bar No. 24013338
*pittmanm@sec.gov*
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102
Phone: (817) 978-6442 (jb)
Fax: (817) 978-2700

ATTORNEYS FOR PLAINTIFF